UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KARL WIRTH,

                Plaintiff,

v.

SALESFORCE, INC.,

                Defendant.

CIVIL ACTION NO. 1:23-cv-11718

**MEMORANDUM OF LAW IN SUPPORT OF SALESFORCE, INC.'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT .................................................................................. 1

II.     FACTUAL ALLEGATIONS ................................................................................... 3

    a.      Plaintiff's Hiring And Termination ................................................................. 3

    b.      Plaintiff's Alleged Whistleblowing Activities ................................................ 4

    c.      Plaintiff's Performance Issues ....................................................................... 6

III.    LEGAL STANDARDS ............................................................................................ 7

    a.      Motion to Dismiss ............................................................................................ 7

    b.      The Sarbanes-Oxley Act .................................................................................. 8

IV.     ARGUMENT ......................................................................................................... 8

    a.   The Complaint Fails To Establish Subjective Belief ....................................... 9

    b.   The Complaint Fails To Establish That Plaintiff's Belief Was Objectively
       Reasonable ...................................................................................................... 10

            i.      A reasonable person in Plaintiff's position would not have
                  believed that the conduct constituted a violation .......................... 11

            ii.     Plaintiff's belief did not approximate the basic elements of
                  shareholder fraud ......................................................................... 13

V.      CONCLUSION ...................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*,
   267 F.3d 30 (1st Cir. 2001).................................................................................................5

*In re Ariad Pharm., Inc. Sec. Litig.*,
   842 F.3d 744 (1st Cir. 2016)...............................................................................................7

*Bruno Int'l Ltd. v. Vicor Corp.*,
   Civil Action No. 14-10037-DPW, 2015 WL 5447652 (D. Mass. Sept. 16,
   2015)....................................................................................................................................15

*Colesanti v. Becton Dickinson*,
   C.A. No. 18-491WES, 2019 WL 4043957 (D. R.I. July 19, 2019)................................ *passim*

*Day v. Staples, Inc.*,
   555 F.3d 42 (1st Cir. 2009)............................................................................................ *passim*

*Edwards v. Commonwealth*,
   477 Mass. 254 (2017) .........................................................................................................7

*Iannacchino v. Ford Motor Co.*,
   451 Mass. 623 (2008) .........................................................................................................7

*Lamb v. Rockwell Automation, Inc.*,
   249 F. Supp. 3d 904 (E.D. Wis. 2017)..........................................................................13,15

*Leonard v. Am. Med. Response*,
   No. CIV.A. 09-10031-RGS, 2009 WL 1883725 (D. Mass. July 1, 2009)..........................7

*Murphy v. U.S.*,
   45 F.3d 520 (1st Cir. 1995).................................................................................................7

*Nielsen v. AECOM Tech. Corp.*,
   762 F.3d 214 (2d Cir. 2014)..........................................................................................11, 15

*Ronnie v. Office Depot, LLC*,
   No. 20-14214, 2023 WL 6210623 (11th Cir. Sept. 25, 2023) ..........................................13

*Samaroo v. Bank of New York Mellon*,
   21-CV-02441 (AT)(KHP), 2021 WL 5910603 (S.D.N.Y. Oct. 5, 2021) ............................5

*San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*,
   687 F.3d 465 (1st Cir. 2012)...............................................................................................7

*Schaer v. Brandeis Univ.*,
    432 Mass. 474 (2000) ....................................................................................3, 6, 9

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)....................................................................................14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...............................................................................15

*Tonra v. Kadmon Holdings, Inc.*,
    405 F. Supp. 3d 576 (S.D.N.Y. 2019)...................................................................14

**Statutes**

18 U.S.C. § 1514A.....................................................................................................8, 11, 13

Sarbanes-Oxley Act .................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 7

Defendant Salesforce, Inc. ("Salesforce") respectfully moves to dismiss Plaintiff Karl Wirth's ("Plaintiff") Complaint (the "Complaint") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. No amendment can save Plaintiff's deficiently pled claim and, therefore, the Complaint should be dismissed with prejudice.

## I.  PRELIMINARY STATEMENT

Trust is one of Salesforce's core values. One of the ways Salesforce earns its customers' and shareholders' trust is through unflinching transparency. This transparency applies to the capabilities of Salesforce's products, including its Customer Data Platform ("CDP") formerly known as "Genie."[1]

Plaintiff is a former Salesforce executive that Salesforce terminated due to his well-documented, significant performance issues.[2] Plaintiff now claims that his termination was because of his purported "whistleblowing" activities. This is false. Despite Plaintiff's best efforts to recast the circumstances surrounding his termination, the Complaint fails to make a prima facie claim for Sarbanes-Oxley Act ("SOX") whistleblower retaliation and must be dismissed.

To bring a SOX whistleblower retaliation claim, Plaintiff must, among other things, show that he engaged in protected activity because he held a subjective and objectively reasonable belief that Salesforce engaged in shareholder fraud. Plaintiff has not done this. First, Plaintiff has not sufficiently pled, and cannot plead, subjective belief or objectively reasonable belief. As to the subjective component, (1) the Complaint clearly shows that "real-time" is not a defined term and

---

[1] Salesforce's CDP has continued to evolve since Plaintiff's termination and is now known as "Data Cloud."

[2] Should this dispute progress beyond the Motion to Dismiss stage, Salesforce will be able to produce ample documentation to support its decision to terminate Plaintiff's employment. However, Salesforce need not wait until summary judgment to dispose of Plaintiff's claim because it is deficiently pled and must be dismissed.

is subject to different interpretations, (2) Plaintiff admits that Salesforce's CDP had real-time processing capabilities, which is fundamentally inconsistent with his claim that Salesforce engaged in fraud when it said its CDP had such capabilities, (3) Salesforce explained at Dreamforce 2022 that some of Genie's real-time processing capabilities were not yet available and would be rolled out over time, and (4) Plaintiff lacked up-to-date knowledge of Genie's capabilities as of Dreamforce 2022. Thus, the Complaint shows that Salesforce and Plaintiff merely had differing views of the meaning of an undefined term, Plaintiff can only make his baseless claim if he mischaracterizes Salesforce's statements and ignores Salesforce's actual representations about Genie, and Plaintiff's "belief" about Genie's capabilities was based on outdated information. As a result, Plaintiff has not shown and cannot show subjective belief that Salesforce engaged in shareholder fraud.

Also fatal to his claim, Plaintiff fails to sufficiently allege that his purported belief was objectively reasonable. To do so, Plaintiff must show that (1) a person with his experience, training and knowledge would share the belief, and (2) the belief at least approximates the elements of shareholder fraud. Plaintiff can do neither. As addressed in detail below and as noted above, Plaintiff lacked contemporaneous knowledge, as well as key experience and training, relating to Salesforce's work on Genie. Plaintiff alleges that he was excluded from key meetings regarding Genie's development at least as early as July 2022. Further, Plaintiff clearly had no involvement in Genie's development as of his September 9, 2022 termination.[3] Therefore, by the time Dreamforce was held, Plaintiff did not have fundamental knowledge about Salesforce's progress

---

[3] On September 9, 2022, Plaintiff received his notice of termination and lost access to Salesforce's systems. However, his last day of employment was September 15, 2022. For purposes of this Motion, Salesforce will refer to his termination date as September 9, 2022, as that is when he ceased being actively employed by Salesforce.

on Genie and had no reasonable basis on which to opine about the veracity of Salesforce's statements about Genie's functions. In addition, as noted above, Plaintiff misstates Salesforce's representations at Dreamforce 2022, rendering his purported belief even more objectively unreasonable.

The Complaint also fails to establish that Plaintiff's belief was objectively reasonable because it does not sufficiently allege that Plaintiff's purported belief approximated the elements of shareholder fraud—scienter, that the alleged misstatements were material to and relied upon by shareholders, and that the conduct yielded economic loss. Plaintiff's allegations regarding scienter are conclusory, baseless speculation that need not be accepted as true for purpose of a motion to dismiss. Moreover, the Complaint lacks <u>any</u> allegations, conclusory or otherwise, regarding materiality, reliance or economic loss.

For these reasons, as set forth in more detail below, Plaintiff's claim is woefully deficient and cannot be saved. Therefore, the Court should grant Salesforce's Motion to Dismiss, and dismiss the Complaint with prejudice.

## II.   **FACTUAL ALLEGATIONS**[4]

### a.   **Plaintiff's Hiring And Termination**

Salesforce is a publicly traded Delaware company with its principal place of business in San Francisco, California. Complaint, ¶ 6. Plaintiff is a former Salesforce employee who lives in Bedford, Massachusetts. *Id.* at ¶¶ 5, 12, 39. Salesforce hired Plaintiff in connection with its

---

[4] The Complaint's factual allegations are taken as true solely for the purposes of Salesforce's Motion to Dismiss. Salesforce does not concede the validity or accuracy of these purported facts and reserves the right to object, deny and refute these and all other allegations in the Complaint. Further, legal conclusions are not taken as true (e.g., that Salesforce's statements about real-time were "false"). *See Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000) (explaining that "we do not accept legal conclusions cast in the form of factual allegations").

acquisition of Plaintiff's former company, Evergage, Inc. ("Evergage"). *Id.* at ¶ 12. On September 9, 2022, Salesforce terminated Plaintiff's employment. *Id.* at ¶¶ 38-39.

   **b.  Plaintiff's Alleged Whistleblowing Activities**

Following Salesforce's acquisition of Evergage, Plaintiff served as Vice President of Product Management. In that role at Salesforce, Plaintiff's team worked on Interaction Studio/Marketing Cloud Personalization (the "IS Team"). *Id.* at ¶ 16. The IS Team worked parallel to a Salesforce group that worked on Salesforce's CDP (the "CDP Team"). *Id.* A CDP "is a generic term within the marketing software industry referring to software that collects information about customers from multiple sources, combines and organizes the information, and then allows the information to be used by other systems for marketing purposes." *Id.* at ¶ 17.

At some point, Salesforce decided to pursue integrating real-time processing into its CDP. *Id.* at ¶ 20. "Real-time" is not a defined term. *See generally* Complaint (no definition of real-time). As part of this process, senior leaders held numerous meetings to discuss the status of real-time processing integration into the CDP. *Id.* at ¶ 34. Plaintiff was not invited to and, thus, did not attend those meetings. *Id.* As a result, as of at least July 2022, Plaintiff lacked knowledge of Salesforce's plans for integrating real-time processing into its CDP and Salesforce's plans for messaging such integration at Dreamforce 2022. *See id.* at ¶ 35.

Despite his lack of knowledge of Salesforce's real-time processing integration work, at some point, Plaintiff allegedly developed a belief that the CDP could not "operate[] in real-time" and that Salesforce did not intend for CDP to have this capability in the near future. *See id.* at ¶¶ 26, 35. Plaintiff developed this belief despite also believing that the CDP was able to "execute some functions such as information collection in real time" even before Salesforce undertook

efforts to integrate real-time processing into its CDP. *See id.* at ¶¶ 18, 20. Plaintiff purportedly shared this belief with individuals within Salesforce. *E.g.*, *id.* at ¶¶ 27-29, 36.

Salesforce's 2022 Dreamforce conference took place on September 20-22, 2022. Plaintiff was terminated eleven days before Dreamforce 2022 began. *See id.* at ¶¶ 38-39. At Dreamforce 2022, Salesforce announced that it was integrating real-time processing capabilities into its CDP. Salesforce called this platform Genie. *Id.* at ¶ 40; Dreamforce Keynote Presentation Slides (the "Keynote Slides") (attached as Ex. 1 to the Affidavit of Kathleen D. Parker ("Parker Aff.")).[5] Throughout Dreamforce 2022, Salesforce presented on Genie's current and planned capabilities. *See id.* at ¶ 40. This included a discussion of Genie during the Dreamforce keynote address (the "Keynote"). *See* Complaint, ¶ 1; Keynote Slides (Parker Aff. Ex. 1). The Keynote Slides contained a "Forward-Looking Statements" slide that, among other things, explained that:

> (1) The "presentation contains forward-looking statements about … trend analyses and future events, future financial performance, anticipated growth, [and] industry prospects …"

> (2) "The achievement or success of the matters covered by such forward-looking statements involves risks, uncertainties and assumptions."

> (3) "If any such risks or uncertainties materialize or if any of the assumptions prove incorrect, Salesforce's results could differ materially from the results expressed or implied by these forward-looking statements."

> (4) "The risks and uncertainties referred to above include … our ability to successfully introduce new services and product features, including any efforts to expand our services

---

[5] The Court can consider these slides at the motion to dismiss stage because Plaintiff relied on them in making his claim and cited them in the Complaint (though the image of one of the Dreamforce 2022 slides Plaintiff included in Paragraph 1 of this Complaint differs slightly from the final slides; the slides Plaintiff has may be from an earlier draft that Plaintiff emailed to himself when he received his notice of termination on September 9, 2022). *See* Complaint, ¶¶ 1, 40; *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001). Further, Plaintiff had the slides in his possession before filing the Complaint. *See Samaroo v. Bank of New York Mellon*, 21-CV-02441 (AT)(KHP), 2021 WL 5910603, at *3 (S.D.N.Y. Oct. 5, 2021) (explaining that the court can consider "documents that the plaintiff 'either possessed or knew about and upon which [he] relied in bringing the suit'" (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

…; the success of our business strategy and our plan to build our business …; our ability to execute our business plans …; the pace of change and innovation in enterprise cloud computing services …"

*See* Keynote Slides (Parker. Aff. Ex. 1).

The Keynote presentation also included slides that, among other things, stated that:

(1)  Genie was the "world's 1st real-time CRM"; and

(2)  Some of Genie's capabilities were available now, while others would be rolled out in 2023.[6]

*See id.* at Ex. 1.

In the Complaint, Plaintiff ignores the Forward-Looking Statement and Salesforce's statements about Genie's future capabilities. Plaintiff also fails to reconcile his claim that Salesforce misrepresented Genie's capabilities when it allegedly said that Genie "had the ability to perform its functions in real-time" with the irrefutable fact that Salesforce explained at Dreamforce that Genie did not yet have certain real-time processing capabilities. Finally, the Complaint ignores Plaintiff's lack of up-to-date knowledge of Genie's capabilities as of Dreamforce 2022.

### c.  <u>Plaintiff's Performance Issues</u>

Plaintiff received negative feedback about his performance during his employment with Salesforce. Complaint, ¶¶ 31-32. This included, but was not limited to, feedback from members of the CDP team. *Id.* at ¶ 31. Plaintiff conclusively asserts that the negative feedback he received was part of a plan to "diminish[] his standing in the company, and potentially caus[e] his termination."

---

[6] Salesforce may have also made the statements set forth in the Complaint and accepts Plaintiff's factual allegation that those statements were made as true for purposes of the Motion to Dismiss. *See* Complaint, ¶ 40. However, Salesforce does not accept as true Plaintiff's legal conclusion that the representations were false. That allegation is not entitled to deference at this stage. *See Schaer*, 432 Mass. at 477.

*See* Complaint, ¶ 38. The Complaint does not, however, contain any factual allegations to support that speculative claim. As noted above, on September 9, 2022, Salesforce terminated Plaintiff. *Id.* at ¶ 39.

## III.   LEGAL STANDARDS

### a.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "factual allegations … regarding each material element necessary to sustain recovery under some actionable theory." *Leonard v. Am. Med. Response*, No. CIV.A. 09-10031-RGS, 2009 WL 1883725, at *3 (D. Mass. July 1, 2009); *see also Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 636 (2008) (explaining that the complaint must provide "more than labels and conclusions" and "be enough to raise a right to relief above the speculative level"). Although the Court must assume the truth of the raw facts set forth in the complaint (*In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 750 (1st Cir. 2016)), it need not consider "naked assertion[s] devoid of further factual enhancement." *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012)). Further, the Court does not regard as true "legal conclusions cast in the form of factual allegations." *Edwards v. Commonwealth*, 477 Mass. 254, 260 (2017). Similarly, a plaintiff "may not rest merely on unsupported conclusions or interpretations of law." *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir. 1995) (quotations omitted); *see Iannacchino*, 451 Mass. at 636 (explaining the plain statement must "possess enough heft to show that the pleader is entitled to relief," not "merely [that] [the complaint is] consistent with[] an entitlement to relief") (quotations omitted).

### b.   The Sarbanes-Oxley Act

SOX protects from retaliation employees who "provide information … regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail

fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information … is provided to … a person with supervisory authority over the employee …" 18 U.S.C. § 1514A(a)(1)(C).

## IV.   ARGUMENT

Plaintiff contends that Salesforce terminated his employment in retaliation for engaging in whistleblowing activity in violation of Section 806 of SOX, 18 U.S.C. § 1514A. Plaintiff fails to state an actionable claim because he does not, and cannot, establish that he engaged in protected activity. Therefore, the Complaint should be dismissed.

To state a prima facie SOX claim, an employee must show, *inter alia*, that the employee engaged in a protected activity or conduct. *Day v. Staples, Inc.*, 555 F.3d 42, 53 (1st Cir. 2009) (citing 29 C.F.R. § 1980.104(b)(1)) (quotations omitted). To establish protected activity, an employee must prove that he provided information regarding conduct which he "reasonably believed" constituted a violation of a law enumerated in § 1514A—here, fraud against shareholders. *See id.* at 53-54. "'Reasonable belief' has both a subjective and objective component." *Id.* at 54. In this case, Plaintiff has not shown and cannot show subjective belief or objectively reasonable belief and his claim fails as a matter of law.

### a.   The Complaint Fails To Establish Subjective Belief

"As to the subjective component, the law is not meant to protect those whose complaints are not undertaken in subjective good faith." *Day*, 555 F.3d at 54. When assessing whether the complaint was undertaken in good faith, courts consider a "'plaintiff's particular educational background and sophistication.'" *Colesanti v. Becton Dickinson*, C.A. No. 18-491WES, 2019 WL 4043957, *7 (D. R.I. July 19, 2019) (quoting *Day*, 555 F3d at 54 n.10)). In this case, Plaintiff

paints himself as a highly experienced, sophisticated executive. *See, e.g.*, Complaint, ¶ 10 ("Plaintiff is an accomplished executive and entrepreneur."). However, Plaintiff's "belief" that Salesforce misrepresented Genie's capabilities is, at best, woefully unsophisticated and, at worst, entirely contrived. Either way, Plaintiff's claim fails as a matter of law because he has not established subjective belief for either or both of the following reasons.

First, Plaintiff's entire claim is based on his "belief" that Salesforce misrepresented Genie's real-time processing capabilities. However, nowhere does the Complaint define "real-time." *See generally* Complaint. This is because, as Plaintiff acknowledges through this glaring omission, there is no single definition of "real-time." Therefore, all Plaintiff can establish is that his purported interpretation of what real-time meant differed from Salesforce's interpretation, not that he believed any fraud had occurred. *See Colesanti*, 2019 WL 4043957 at *8 (dismissing complaint where allegations fell short of alleging that what plaintiff reasonably believed he had uncovered and was disclosing approximated fraudulent activity). Indeed, Plaintiff's allegation that the CDP team was "redefin[ing]" real-time shows that his true complaint was that Salesforce's description of the term differed from his own, not that Salesforce fraudulently misrepresented anything.[7] *See* Complaint, ¶ 25.

Second, Plaintiff's purported belief is contradicted by many of the Complaint's other allegations. For example, Plaintiff alleges that he believed Salesforce's alleged assertion that "Genie already had the ability to perform its functions in real-time" was false. *See* Complaint, ¶ 40(b). However, Plaintiff admits that, even before Salesforce started "pursu[ing] making its CDP operate in real-time," Salesforce's CDP "was able to execute some functions … in real time." *See*

_____

[7] Plaintiff's allegation that the CDP team "redefined" real-time so it could "falsely" claim that CDP operated in real-time is a legal conclusion that is not entitled to deference. *See Schaer*, 432 Mass. at 477.

Complaint, ¶¶ 18, 20. Therefore, he admits that he believed Salesforce's CDP (subsequently named Genie) had real-time processing capabilities, but then claims that such a representation at Dreamforce 2022 was false. In addition, the Keynote Slides clearly show that Salesforce explained that Genie did not have certain real-time processing capabilities as of Dreamforce 2022. *See* Keynote Slides (Parker Aff. Ex. 1). Thus, it is patently untrue that Salesforce stated that Genie could perform <u>all</u> of its functions "in real-time" and the actual representations Salesforce made at Dreamforce contradict Plaintiff's alleged belief. Moreover, as addressed in more detail below, Plaintiff admits that he did not have contemporaneous knowledge of Genie's capabilities as of Dreamforce 2022 and fails to explain how he could then opine on the veracity of Salesforce's statements. *See* Complaint, ¶¶ 34, 39, 40. These internal inconsistencies are fatal to Plaintiff's claim that he held a subjective belief that Salesforce's statements about Genie were false. *See Colesanti*, 2019 WL 4043957 at *9 (explaining that a pleading must be dismissed when plaintiff's allegations appear internally inconsistent).

### b.  <u>The Complaint Fails To Establish That Plaintiff's Belief Was Objectively Reasonable</u>

To bring a SOX whistleblower claim, a plaintiff must also show that the belief was objectively reasonable because (1) "a reasonable person in his position would have believed that the conduct constituted a violation" (*Colesanti,* 2019 WL 4043957, at *7 (quotations omitted)) and (2) the belief "at least approximate[s] the basic elements of a listed law in § 1514A …"— here, shareholder fraud (*see Day*, 555 F.3d at 55-56). Plaintiff does neither and his claim fails.

#### i.  A reasonable person in Plaintiff's position would not have believed that the conduct constituted a violation

"Objective reasonableness is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the …

employee." *Colesanti*, 2019 WL 4043957, at *7; *see also Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014). In light of Plaintiff's experience and training, a reasonable person in Plaintiff's position would not have believed that Salesforce's conduct violated the law. Therefore, Plaintiff's belief is objectively unreasonable.

First, as discussed above, Plaintiff knew that "real-time" was not a defined term. *See generally* Complaint (no definition of real-time; no argument that Salesforce made representations about Genie's real-time capabilities that differ from "the" definition of real-time). A reasonable person in Plaintiff's situation would also know that. Such a person could not reasonably believe that Salesforce's statements about real-time processing integration into its CDP violated the law just because the statements were based on a different interpretation of "real time" than their own. As a result, Plaintiff's belief is objectively unreasonable.

Second, Plaintiff misrepresents Salesforce's purported statements about Genie in an attempt to make his belief seem more reasonable. Plaintiff appears to allege that Salesforce falsely asserted that Genie could perform all functions "in real-time." *See* Complaint, ¶ 40. Unfortunately for Plaintiff, whether Salesforce said that or not, Salesforce also explained at Dreamforce 2022 that some of Genie's real-time processing capabilities were currently available[8], while others would be rolled out in the future. For example: "Enablement" was projected for Winter '23; "Einstein Bots for Sales" were projected for Summer '23; "Contact Center Genie" was projected for Winter '23; "Frontline Service" was projected for Winter '23; and "WhatsApp-First Business Messaging" was projected for Spring '23; "Real-Time Journey Orchestration" was in its pilot phase; and the "New Slack Platform" was in its Beta phase. *See* Keynote Slides (Parker Aff. Ex.

---

[8] That statement is consistent with Plaintiff's admission that Salesforce's CDP "was able to execute some functions … in real time" even before Salesforce decided to pursue making its CDP operate in real-time. *See* Complaint, ¶¶ 18, 20.

1). Plaintiff omits this key, irrefutable information because a reasonable person with these facts would not conclude that Salesforce represented at Dreamforce 2022 that Genie could complete <u>all</u> <u>tasks</u> in "real-time." Therefore, a reasonable person with these facts could not, in turn, conclude that Salesforce engaged in shareholder fraud.

<u>Third</u>, Plaintiff's experience with Salesforce's real-time processing integration into its CDP significantly decreased and ultimately ended before Salesforce made the statements Plaintiff contends were false. Specifically, Plaintiff alleges that, at least as early as July 2022, he was not involved in "numerous meetings … where senior leaders discussed the status of real-time integration into the CDP." *See* Complaint, ¶ 34. Further, Salesforce terminated Plaintiff on September 9, 2022, approximately two weeks before Dreamforce 2022. *See* Complaint, ¶ 38. Therefore, Plaintiff admits that he had limited knowledge of Salesforce's real-time processing integration into its CDP as of, at least, July 2022, and that he had absolutely no knowledge of Genie's capabilities as of September 9, 2022, or thereafter.[9] A reasonable person with Plaintiff's background would know the amount of technological progress that can be made on a project over the course of a few months and even in a couple of weeks. Such a person would not reasonably conclude that his months-old knowledge of a platform's capabilities was accurate or complete. Plaintiff fails to acknowledge his lack of up-to-date knowledge of Genie because that is the only way he can make this claim. However, Plaintiff cannot hide from the Complaint's allegations, which establish that Plaintiff's belief that Salesforce misrepresented Genie's capabilities at

---

[9] Plaintiff's lack of experience in and knowledge of Salesforce's CDP's real-time capabilities as of Dreamforce 2022 is likely why Plaintiff does not, and cannot, make any factual allegations that support his legal conclusion that Salesforce's representations at Dreamforce 2022 were "false." *See* Complaint, ¶ 40.

Dreamforce is based on pure speculation and is, thus, objectively unreasonable.[10] *See Colesanti*, 2019 WL 4043957 at *11 (dismissing SOX claim where the complaint lacked any "suggestion that [plaintiff]'s education, training and job experience at [the company] placed him in a position to identify actual fraud …" at the company); *see also Lamb v. Rockwell Automation, Inc.*, 249 F. Supp. 3d 904, 915 (E.D. Wis. 2017) (explaining that a SOX claim "is not a place for open speculation …").

For these reasons, Plaintiff fails to establish that he engaged in protected activity and his SOX claim must be dismissed.

### ii. Plaintiff's belief did not approximate the basic elements of shareholder fraud

Plaintiff also fails to establish that his belief was objectively reasonable because he does not sufficiently allege that his belief "at least approximate[s] the basic elements of a listed law in § 1514A …" *See Day*, 555 F.3d at 55-56; *Colesanti*, 2019 WL 4043957 at *7. At a high level, the elements of a shareholder fraud claim are scienter, that the alleged misstatements were material to and relied upon by shareholders, and that the conduct yielded economic loss. *See Ronnie v. Office Depot, LLC*, No. 20-14214, 2023 WL 6210623, at *4 (11th Cir. Sept. 25, 2023). While Plaintiff need not prove every element of shareholder fraud, "he must make more than [] conclusory allegation[s]" regarding the claim. *See id*. Plaintiff does not (and cannot) do this.

<u>First</u>, the Complaint does not contain <u>any</u> allegations, conclusory or otherwise, that the "misstatements" were material to shareholders, were actually relied upon by shareholders, or yielded economic loss. *See generally* Complaint. This alone is fatal to Plaintiff's claim. *See Day*,

---

[10] Notably, Plaintiff does not allege that Salesforce actually made any public statements that he believed were false or misleading back when he had actual knowledge of Salesforce's CDP's capabilities.

555 F.3d at 57 (finding that plaintiff failed to establish an objectively reasonable belief of shareholder fraud where plaintiff made no showing that any inaccuracy was material to shareholders); *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 590 (S.D.N.Y. 2019) (dismissing SOX retaliation claim where plaintiff did not allege that the information would be material to investors or that he held a subjective or objectively reasonable belief that this information would be material).

Assuming, *arguendo*, that Plaintiff has the opportunity to replead, Plaintiff cannot establish that the "misrepresentations" about Genie's capabilities were material to shareholders. An alleged misrepresentation is material if, "in the view of a reasonable investor," it "significantly altered the total mix of information made available" when deciding whether to buy or sell shares of stock. *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (quotations omitted). "The statement must also be mislead[ing], evaluated not only by the literal truth, but by context and manner of presentation." *Id.* (quotations omitted).

Here, the purported statements were made in the context of: (1) a "Forward-Looking Statements" disclaimer that explained, among other things, that the "presentation contains forward-looking statements about … trend analyses and future events, future financial performance, anticipated growth, [and] industry prospects …" and "[t]he achievement or success of the matters covered by such forward-looking statements involves risks, uncertainties and assumptions"; and (2) clear messaging that certain aspects of Genie were <u>not</u> yet operational and would be rolled out in the future. *See* Keynote Slides (Parker Aff. Ex. 1). A reasonable investor would take the Forward-Looking Statements disclaimer into account when making investment decisions. A reasonable investor would also hear Salesforce's timeline for Genie's roll-out and would not conclude that Salesforce claimed that Genie's real-time processing integration was

complete as of Dreamforce 2022. *See id.* Therefore, even assuming for purposes of the Motion to Dismiss that Salesforce stated that Genie could "perform its functions in real-time" (Complaint, ¶ 40), that representation alone would not be material to a shareholder when viewed in context.

Second, Plaintiff's only allegations about scienter are: (1) "Upon information and belief, the decision was made [by senior leaders] at [] meetings" (that Plaintiff did not attend) "to falsely claim at Dreamforce that Salesforce had successfully integrated real-time into its CDP"; and (2) "While Plaintiff did not have direct knowledge of this plan, he remained reasonably concerned that such a fraudulent scheme existed …" *See* Complaint, ¶¶ 34-35. These statements are not supported by any non-conclusory, plausible facts. As a result, they are purely speculative and should not be accepted as true. *See Bruno Int'l Ltd. v. Vicor Corp.*, Civil Action No. 14-10037-DPW, 2015 WL 5447652, at *3 (D. Mass. Sept. 16, 2015) (explaining that the court would only consider "allegations couched in 'information and belief'" to the extent they "state non-conclusory, plausible facts and permit plausible inferences"). Because Plaintiff's allegations regarding scienter are based on unreasonable inferences and unwarranted deductions, they cannot support his claim and his belief fail to approximate the elements of shareholder fraud. *See Nielsen*, 752 F.3d at 224 (dismissing claim and explaining that SOX whistleblower claims predicated on shareholder fraud that survive dismissal include "stronger claims regarding…the complicity of the employer in unlawful conduct"); *Lamb*, 249 F. Supp. 3d at 919 (finding plaintiff's claim as deficient where he merely showed an "unbroken string of hypothetical scenarios and unsupported inferences"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that, at the motion to dismiss stage, the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Therefore, Plaintiff has not adequately pled that his belief was objectively reasonable.

## V.   <u>**CONCLUSION**</u>

For the reasons set forth above, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

**SALESFORCE, INC.**

**By its attorneys,**

*/s/ Kathleen D. Parker*
Kathleen D. Parker (BBO #681635)
   kathleen.parker@klgates.com
K&L GATES LLP
One Congress Street
Boston, MA 02114
Tel. 617-261-3100

Dated this 16th day of October 2023

17

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed through the Electronic

Court Filing system on October 16, 2023, and a copy thereof will be sent electronically to the

registered recipients and registered counsel of record.

*/s/ Kathleen D. Parker*

Kathleen D. Parker
