UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KARL WIRTH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SALESFORCE, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 1:23-cv-11718 |

**REPLY IN SUPPORT OF SALESFORCE, INC.'S MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

 

Respectfully submitted,

**SALESFORCE, INC.,**

**By its attorney,**

<u>/s/ Kathleen D. Parker</u>
Kathleen D. Parker (BBO #681635)
K&L Gates LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Tel. 617-261-3100
Fax 617-261-3175
kathleen.parker@klgates.com

Dated: January 19, 2024

**TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................................... 1

    a.    Plaintiff's Arguments Based On *Sylvester v. Parexel Int'l LLC* Fail ...................... 1

    b.    Plaintiff's Belief Did Not Approximate The Basic Elements Of Shareholder Fraud ........................................................................................................................ 3

        i.    Plaintiff Fails To Plead That His Belief Approximated The Material Misrepresentation Element Or "In Connection With The Purchase Or Sale Of A Security" Element ....................................................................... 4

        ii.    Plaintiff Fails To Establish That His Belief Approximated The Scienter, Economic Loss, Or Loss Causation Elements ............................. 6

        iii.   Plaintiff Does Not Argue That His Belief Approximated The Reliance Element Of A Shareholder Fraud Claim And, Thus, Waives This Argument ...................................................................................................... 8

    c.    Salesforce's Remaining Arguments Further Support Dismissal Of Plaintiff's Claim ....................................................................................................................... 8

II.   CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                  **Page(s)**

*In re Ames Dep't Stores Inc. Stock Litig.*,
   991 F.2d 953 (2d Cir. 1993) ................................................................................................5, 6

*In re Bed Bath & Beyond Corp. Sec. Litig.*,
   Case No. 1:22-cv-02541-TNM, 2023 WL 4824734 (D. D.C. July 27, 2023) .........................10

*Brennan v. Zafgen, Inc.*,
   853 F.3d 606 (1st Cir. 2017) ......................................................................................................7

*Bruno Int'l Ltd. v. Vicor Corp.*,
   Civil Action No. 14-10037-DPW, 2015 WL 5447652 (D. Mass. Sept. 16,
   2015) ..........................................................................................................................................5

*In re Carter-Wallace Inc. Sec. Litig.*,
   Case No. 95 Civ. 5704, 1996 WL 34405521 (S.D.N.Y. Jan. 5, 1996) .....................................6

*In re Carter-Wallace, Inc. Sec. Litig.*,
   150 F.3d 153 (2d Cir. 1998) ..................................................................................................5, 6

*Colesanti v. Becton Dickinson*,
   C.A. No. 18-491 WES, 2019 WL 4043957 (D. R.I. July 19, 2019) ..............................2, 3, 5, 9

*Day v. Staples, Inc.*,
   555 F.3d 42 (1st Cir. 2009) ............................................................................................2, 3, 6

*Decoulos v. Town of Aquinnah*,
   Case No. 17-cv-11532-ADB, 2018 WL 3553351 (D. Mass. July 24, 2018) ............................4

*Edwards v. Comm.*,
   477 Mass. 254 (2017) .............................................................................................................10

*Leonard v. Am. Med. Response*,
   No. CIV.A. 09-10031-RGS, 2009 WL 1883725 (D. Mass. July 1, 2009) ................................8

*Nielsen v. AECOM Tech.Corp.*,
   762 F.3d 214 (2d Cir. 2014) ..................................................................................................3, 5

*Perkins v. City of Attleboro*,
   969 F. Supp. 2d 158 (D. Mass. 2013) ......................................................................................8

*Rock v. Lifeline Systems Company*,
   Civil Action No. 13-11833-MBB, 2015 WL 6453139 (D. Mass. Oct. 23,
   2015) ........................................................................................................................................2

*Rodriguez v. Munic. Of San Juan*,
    659 F.3d 168 (1st Cir. 2011) ................................................................................................ 8

*Ronnie v. Office Depot, LLC*,
    81 F.4th 1345 (11th Cir. 2023) ............................................................................................. 2

*Ryerson v. American Express Financial Services, Inc.*,
    ARB No. 08-064, 2010 WL 3031375 (U.S. Dep't of Labor July 30, 2010) ........................ 3

*San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*,
    687 F.3d 465 (1st Cir. 2012) ................................................................................................ 9

*Sylvester v. Parexel Int'l LLC*,
    ARB No. 07-123, 2011 WL 2517148 (U.S. Dep't of Labor May 25, 2011) ............... 1, 2, 3

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503 (1st Cir. 2005) ............................................................................................ 7, 8

Pursuant to the Honorable Judge Angel Kelley's Standing Order Regarding Motion Practice, Salesforce[1] submits this reply in support of its Motion to Dismiss. Plaintiff's Opposition is a lengthy recitation of "facts," followed by baseless arguments founded on non-binding agency orders and inapplicable case law. Tellingly, the Opposition fails to address any of the cases on which Salesforce relies and does not cite any of the Amended Complaint's allegations in the Arguments section. Rather than showing why the Court should deny Salesforce's Motion, the Opposition magnifies the weaknesses of Plaintiff's claim and the deficiency of his pleading.

As set forth in the Motion and Supporting Memorandum, Plaintiff fails to set forth a claim for SOX whistleblower retaliation. He has not established and cannot establish a subjective belief or objectively reasonable belief that Salesforce engaged in shareholder fraud and, thus, cannot show that he engaged in protected activity. Nothing set forth in the Opposition supports a contrary conclusion and Salesforce's Motion to Dismiss should be granted.

I. ARGUMENT

    a. **Plaintiff's Arguments Based On *Sylvester v. Parexel Int'l LLC* Fail**

To avoid the Massachusetts pleading standards he fails to meet, Plaintiff incorrectly claims that a 2011 decision by the Department of Labor's Administrative Review Board ("ARB") "provides controlling authority" and supports his arguments against dismissal. *See* Opp., p. 13. Specifically, Plaintiff argues that he sufficiently pled his claim under *Sylvester v. Parexel Int'l LLC* because (1) he is not required to establish that his belief about Salesforce's alleged conduct approximated the elements of shareholder fraud, and (2) his claim can be based on his alleged

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in Salesforce's Motion to Dismiss ("Motion," "Motion to Dismiss" or "Mot.") (Doc No. 20) and Salesforce's Memorandum of Law (the "Supporting Memorandum" or "Memo.") (Doc No. 21). Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint (Doc No. 26) shall be referred to as the "Opposition" or "Opp."

1

belief that Salesforce would commit fraud in the future. *See id.* at pp. 13-16 (citing *Sylvester*, ARB No. 07-123, 2011 WL 2517148, at *15 (U.S. Dep't of Labor May 25, 2011)). Plaintiff's argument fails.

First, the law is clear—to bring a SOX whistleblower retaliation claim in this jurisdiction, a plaintiff must show that his belief "at least approximate[s] the basic elements of" an enumerated law. *Day v. Staples, Inc.*, 555 F.3d 42, 55-56 (1st Cir. 2009); *see* Memo., pp. 15-18. Indeed, District of Massachusetts Magistrate Judge Marianne Bowler confirmed this requirement after *Sylvester*, as did a magistrate judge in the District of Rhode Island.[2] *See Rock v. Lifeline Sys. Co.*, Civil Action No. 13-11833-MBB, 2015 WL 6453139, *12 (D. Mass. Oct. 23, 2015); *Colesanti v. Becton Dickinson*, C.A. No. 18-491 WES, 2019 WL 4043957, *7 (D. R.I. July 19, 2019).

Second, Massachusetts courts have not found that SOX whistleblower retaliation claims can be based on a belief in possible future fraud. *See* Opp., pp. 13-14. Rather, an employee must believe that the employer is perpetrating fraud against its shareholders.[3] *See, e.g., Day*, 555 F.3d at 54-55 (examining whether the plaintiff "had an objectively reasonable belief that the conduct constituted securities fraud or shareholder fraud" and discussing whether the plaintiff had "an objectively reasonable belief there has been shareholder fraud" (emphasis added)). Further, even assuming *arguendo* that Plaintiff could base his claim on his alleged belief in future fraud, that belief was objectively unreasonable. *See* Memo., pp. 13-15. None of the Amended Complaint's allegations support Plaintiff's unfounded theory that Salesforce would commit shareholder fraud

---

[2] Plaintiff pursues a winding path of strained legal reasoning to claim the First Circuit "would follow" the *Sylvester* decision. *See* Opp., pp. 14-15. But, the reality is that the First Circuit has not followed *Sylvester*, *Day* is still good law, and, like plaintiffs in many other circuits, Plaintiff must make some showing of the elements of shareholder fraud to enjoy SOX protection. *See Day*, 555 F.3d at 55-56; *Ronnie v. Office Depot, LLC*, 81 F.4th 1345, 1350-51 (11th Cir. 2023).

[3] In fact, despite its language about future conduct, even *Sylvester* involved an existing violation. *See Sylvester*, 2011 WL 2517148, at *2-3.

in the future if it announced Genie at Salesforce.

Third, Plaintiff's reliance on *Sylvester* seeks to distract from the standard the Amended Complaint must meet to survive a Rule 12(b)(6) motion. An OSHA complaint's sufficiency is not judged under Rule 12 because such complaints need only be "in writing and 'should contain a full statement of the acts and omissions with pertinent dates, which are believed to constitute the violations.'" *See Sylvester*, 2011 WL 2517148 at *10 (quoting 29 C.F.R. § 1980.103(b)). Thus, in *Sylvester*, the ARB did not decide whether the complaint sufficiently pled a SOX whistleblower retaliation claim under Rule 12(b)(6) and the ruling is irrelevant.[4] *See id.* at *10-11.

In sum, Plaintiff's dependence on *Sylvester* exposes the weakness of his claim and the deficiency of his pleading. Thus, the Motion should be granted.[5]

### b. Plaintiff's Belief Did Not Approximate The Basic Elements Of Shareholder Fraud

Plaintiff next contends that, leaving *Sylvester* aside, dismissal is improper because he sufficiently pled that his belief approximated the basic elements of shareholder fraud. *See* Opp., pp. 16-18. The elements of shareholder fraud are "(1) a material misrepresentation or omission; (2) scienter; (3) connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Day*, 555 F.3d at 56 (quotations omitted). Plaintiff relies on conclusory

---

[4] Plaintiff also relies on the ARB's decision in *Ryerson v. Am. Express Fin. Servs., Inc.* to argue that Salesforce's alleged response to his reports shows that his belief was reasonable. *See* Opp., p. 18. The First Circuit has not adopted *Ryerson*'s holding and courts in this district have not relied on the ruling (hence why Plaintiff fails to cite any First Circuit or District of Massachusetts cases).

[5] Plaintiff also claims that courts have recognized that it is often inappropriate to determinate the 'reasonable belief' issue on a motion to dismiss. *See* Opp., pp. 14-15. This argument ignores the various courts that have recognized that motions to dismiss based on reasonable belief <u>are</u> appropriate, including those cited in Salesforce's Supporting Memorandum (none of which Plaintiff addresses). *See* Memo., pp. 9, 11-12, 15, 17 (citing *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 590 (S.D.N.Y. 2019), *Nielsen v. AECOM Tech.Corp.*, 762 F.3d 214, 223-24 (2d Cir. 2014), and *Colesanti*, 2019 WL 4043957, *8).

allegations (with no citations to the Amended Complaint) and inapplicable case law to argue that he adequately pled that his belief approximated these elements. *See* Opp., pp. 16-18. Further, because Plaintiff fails to address any of the cases on which Salesforce relies in support of dismissal, he has no response to the cases that establish that his belief did not approximate the elements of shareholder fraud. *See id.* at pp. 16-18; Memo., pp. 15-17.

> i. **Plaintiff Fails To Plead That His Belief Approximated The Material Misrepresentation Element Or "In Connection With The Purchase Or Sale Of A Security" Element**

Plaintiff asserts that he sufficiently pled the "material misrepresentation" and "in connection with" elements merely because Salesforce's representations "would have been widely disseminated in the market." *See* Opp., p. 17. This argument fails for least four reasons.

First, Plaintiff does not cite any part of the Amended Complaint that supports his position. Thus, his allegation must be disregarded. *See Decoulos v. Town of Aquinnah*, Case No. 17-cv-11532-ADB, 2018 WL 3553351, *12 (D. Mass. July 24, 2018) (explaining that "[plaintiff] cannot bolster . . . [a] Complaint through the late addition of new facts in opposing a motion to dismiss").

Second, Plaintiff's position ignores Salesforce's actual statements about Genie's capabilities, as well as the case law that establishes that the purportedly false statements would not be material to investors or misleading when viewed in context. *See* Memo., pp. 16-17. Plaintiff now claims that Salesforce's actual statements are irrelevant because his Whistleblowing Activities happened before the statements were made. *See* Opp., pp. 1-2, 17. However, Plaintiff's position is disingenuous, at best, as he relies extensively on Salesforce's Dreamforce and other post-Whistleblowing Activities statements to make his claim. *See, e.g.,* AC ¶¶ 1-2, 48-53, 57-58. Further, the statements are relevant to whether Plaintiff's "belief" approximated the materiality element and other elements of a shareholder fraud claim. *See* Memo., pp. 16-17.

Third, assuming *arguendo* that Salesforce's actual statements are irrelevant and Plaintiff's

4

claim is based on what Salesforce planned to say at Dreamforce, Plaintiff's claim is deficiently pled because he does not include any <u>factual</u> allegations about Salesforce's planned statements. Instead, he merely alleges that "[u]pon information and belief," Salesforce decided to "claim at Dreamforce that [it] had successfully integrated real-time into its CDP." *See* AC ¶ 41. This statement is not supported by non-conclusory, plausible facts, is purely speculative, and should not be accepted as true. *See Bruno Int'l Ltd. v. Vicor Corp.*, Civil Action No. 14-10037-DPW, 2015 WL 5447652, at *3 (D. Mass. Sept. 16, 2015) (explaining that the court would only consider "allegations couched in information and belief" if they "state non-conclusory, plausible facts and permit plausible inferences") (quotations omitted). Because there are <u>no factual allegations</u> about Salesforce's planned statements at Dreamforce, there are no allegations that support the conclusion that a reasonable person with Plaintiff's knowledge would have believed that Salesforce planned to misrepresent Genie's capabilities at Dreamforce. Therefore, Plaintiff's claim fails.[6] *See Colesanti*, 2019 WL 4043957, at *7; *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014).

<u>Fourth</u>, Plaintiff's argument that he can show that his belief approximated the "material misrepresentation" and "in connection with" elements merely by alleging that the information was "widely disseminated" in the marketplace is based on inapplicable case law. *See* Opp., p. 17 (citing *In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953, 962 (2d Cir. 1993) ("*Ames*") and *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998) ("*Carter-Wallace*")).

As an initial matter, neither *Ames* nor *Carter-Wallace* is a SOX whistleblower retaliation case. Further, in *Ames*, the company made false statements about its "financial health" and "future

---

[6] Plaintiff claims that he drafted scripts for Dreamforce, but does not say what was in those scripts and does not allege that those scripts (or anything else he saw relating to Genie) contained any false information. *See* AC ¶¶ 19, 24.

profitability," including providing growth percentages and revenue numbers. *See* 991 F.2d at 956, 958-61. In *Carter-Wallace*, the company made false statements about its financial health and claimed that the company's drug had not caused any deaths when, in fact, it had. *See* 150 F.3d at 155. In both cases, the statements were included in public filings with the SEC. *See Ames*, 991 F.2d at 958-61; *Carter-Wallace*, 150 F.3d at 155. Therefore, the content of the statements in both cases and the documents in which those statements were contained have no similarities to this case and do not support Plaintiff's argument that Salesforce's planned statements about Genie's real-time processing capabilities were made "in connection with" the purchase or sale of its shares.[7] *See Ames*, 991 F.2d at 966-67 (noting that the case was a "straightforward" "in connection with" case because defendants were accused "of defrauding plaintiffs by misleading the general public as to the market value of securities they had issued" and stating that it is reasonable to assume that investors may rely on material in false public corporate financial statements, and in so relying may subsequently purchase the corporation's securities).

> ii. **Plaintiff Fails To Establish That His Belief Approximated The Scienter, Economic Loss, Or Loss Causation Elements**

Plaintiff next argues that he was not required to plead that his belief approximated the scienter, economic loss, and loss causation element, but, in any event, he did. *See* Opp., p. 17, n.3. Plaintiff's arguments are baseless.

<u>First</u>, Plaintiff is wrong. He <u>is required</u> to show that his belief approximated <u>all</u> of the basic elements of securities fraud, including scienter, loss, and loss causation. *See Day*, 555 F.3d at 56.

---

[7] Further distinguishing *Ames* from this case, in *Ames* the price of the common stock plunged and Ames filed for bankruptcy, thus satisfying the economic loss and loss causation elements of the claim. *See Ames*, 991 F.2d at 961. Similarly, the plaintiffs in *Carter-Wallace* alleged an approximate 33% drop in stock price. *See In re Carter-Wallace Inc. Sec. Litig.*, Case No. 95 Civ. 5704, 1996 WL 34405521 (S.D.N.Y. Jan. 5, 1996) at Complaint at ¶ 5.

Second, the cases on which Plaintiff relies to argue that he adequately pled these three elements are not SOX whistleblower cases, are otherwise inapplicable and do not salvage his deficient claim. *See* Opp., p. 17 n.3 (citing *Brennan v. Zafgen, Inc.*, 853 F.3d 606 (1st Cir. 2017); *In re Xcelera.com Sec. Litig.*, 430 F.3d 503 (1st Cir. 2005) ("*Xcelera.com*")). In *Brennan*, the Court found that the allegations did not establish a strong inference of scienter. *See* 853 F.3d 606, 614. The Court also explained that scienter requires a showing of "a conscious intent to defraud" or, alternatively, "a high degree of recklessness." *See id.* at 613-14. Plaintiff does not point to any part of the Amended Complaint that shows he believed there was a conscious intent to defraud or high degree of recklessness. *See* Opp., p. 17, n.2. Indeed, as set forth in the Supporting Memorandum, Plaintiff's only allegations that even hint at scienter are conclusory and speculative (and certainly do not rise to the level of a conscious intent to defraud or high degree of recklessness). *See* Memo., pp. 17-18.

Further, *Xcelera.com* does not support Plaintiff's argument that he sufficiently pled the loss and loss causation elements because of the "fraud on the market" doctrine. *See* Opp., p. 17, n.2. Again, Plaintiff does not identify where in the Amended Complaint he pled that his belief approximated those elements because of the fraud on the market doctrine or otherwise. Further, *Xcelera.com* is inapplicable. In *Xcelera.com*, the Court stated that, for purposes of assessing a class certification order, the "fraud-on-the market theory eliminates the need to prove individualized reliance by allowing a rebuttable presumption that the plaintiff relied on the 'integrity of the market price' which reflected the misrepresentation," so long as the market is "efficient." *See*, 430 F.3d at 507. Thus, not only is the Court's conclusion much more complicated than Plaintiff's terse statement about "fraud on the market," but the "fraud on the market" doctrine relates to reliance, not loss or loss causation. Thus, this case does not support Plaintiff's argument that he adequately

pled loss or loss causation.

                        iii. **Plaintiff Does Not Argue That His Belief Approximated The Reliance Element Of A Shareholder Fraud Claim And, Thus, Waives This Argument**

As discussed above, *In re Xcelera.com*'s fraud on the market holding deals with reliance, not loss. However, nowhere in the Opposition does Plaintiff actually argue that his belief approximated the reliance element of a shareholder fraud claim. Thus, he fails to make this argument and waives it. *See Rodriguez v. Munic. of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) (explaining that "[i]t should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument"); *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 177 (D. Mass. Sept. 17, 2013) (finding that an argument against dismissal is waived where plaintiff did not address it in his opposition to the motion to dismiss).

In light of the above, as well as those arguments set forth in the Motion and Supporting Memorandum, Plaintiff has not sufficiently pled that his belief at least approximated the elements of a shareholder fraud claim. Therefore, Plaintiff's belief was not objectively reasonable.

        c. **Salesforce's Remaining Arguments Further Support Dismissal Of Plaintiff's Claim**

Plaintiff claims that Salesforce's other arguments for dismissal lack merit. However, it is Plaintiff's arguments that lack merit and do nothing to defeat Salesforce's Motion.

First, Plaintiff argues that Salesforce's Motion fails because the record does not support its assertions about "real-time" not having a singular meaning. Plaintiff's argument misses the mark. The burden is on Plaintiff to sufficiently plead his claim. *Leonard v. Am. Med. Response*, No. CIV.A. 09-10031-RGS, 2009 WL 1883725, at *3 (D. Mass. July 1, 2009). Plaintiff's claim can be distilled to the following:

- "Real-time" has one meaning—"that the program could complete all of its necessary functions within milliseconds." *See* AC ¶ 31.

- Plaintiff "knew" that Genie could not complete all of its functions in milliseconds. *See id.* at ¶ 31.
- As a result, he "reasonably" believed that Salesforce's planned statements about Genie's real-time processing capabilities were false. *See id.* at ¶ 32.

Plaintiff's belief that Salesforce planned to make false statements about Genie is only objectively reasonable if "real-time" has the meaning Plaintiff ascribes to it. If this is not the meaning of real-time, then a reasonable person in Plaintiff's factual circumstances would not have heard the word "real-time" and automatically concluded that this meant that Genie could complete every function in milliseconds. *See Colesanti*, 2019 WL 4043957, at *7; *see also* Memo., pp. 12-14. Instead, a reasonable person would have heard Salesforce's planned or actual statements and concluded that Salesforce was explaining Genie's processing capabilities, including some real-time processing capabilities.[8] Without a single definition, all Plaintiff is claiming is that he did not agree with how Salesforce planned to describe Genie's real-time processing capabilities, not that its statements were false.

Thus, the burden is not on Salesforce to show that "real-time" does not have a "single, consistent, universally accepted, or statutorily binding definition," it is on Plaintiff to show that it does. Plaintiff has not satisfied this burden because he merely conclusively alleges that there is a "generally accepted understanding in the industry as to what 'real-time' meant—specifically, that the program could complete all of its necessary functions within milliseconds" *See* AC ¶ 31. Such "naked assertion[s] devoid of further factual enhancement" and "unsupported conclusions" need not be considered.[9] *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st

---

[8] Further, as the Court can plainly see, Plaintiff's argument that Salesforce removed the term "real-time" from its marketing materials after Plaintiff disclosed his Whistleblowing Activities is false. The term "real-time" still appears in the Data Cloud slide. Opp., p. 12.

[9] Similarly, Plaintiff's allegations about Genie's real-time processing capabilities are inconsistent unless "real-time" means that "all of the functions of the program . . . run in real-time." *See* Opp.,

9

Cir. 2012); *Edwards v. Comm.*, 477 Mass. 254, 260 (2017).

Second, Plaintiff's reliance on *In re Bed Bath & Beyond Corp. Sec. Litig.* is misplaced and actually undercuts his argument. In that case, as Plaintiff notes, the Court found that "[m]eaning can be supplied by context." Opp., p. 19. Here, the context of Salesforce's planned (and actual) statements included the timeline of Genie's real-time processing capabilities roll-out and a forward looking statement disclaimer. *See* Memo., p. 13. This makes it clear that Salesforce did not plan to claim—and did not actually claim—that Genie could complete all tasks in "real-time," as Plaintiff alleges. Thus, with this context, a reasonable person would not believe that Salesforce was going to engage in shareholder fraud when it announced Genie's launch.

## II. CONCLUSION

For the reasons set forth herein, as well as those set forth in the Motion and Supporting Memorandum, Plaintiff's SOX whistleblower retaliation claim fails and the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

**SALESFORCE, INC.,**

**By its attorney,**

*/s/ Kathleen D. Parker*
Kathleen D. Parker (BBO #681635)
K&L Gates LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Tel. 617-261-3100
Fax 617-261-3175
kathleen.parker@klgates.com

Dated: January 19, 2024

---

p. 19. If that is not the meaning of "real-time," then Plaintiff's admission that Genie had certain real-time processing capabilities before Salesforce started "purs[ing] making its CDP operate in real-time" is a fatal pleading inconsistency, as the admission proves that it was objectively unreasonable for Plaintiff to "believe" that Salesforce would commit fraud if it discussed Genie's real-time processing capabilities at Dreamforce. Am. Comp., ¶¶ 19, 24.

10

## CERTIFICATE OF SERVICE

I, Kathleen D. Parker, hereby certify that on January 19, 2024, the foregoing document was served on counsel of record.

/s/ *Kathleen D. Parker*
Kathleen D. Parker