UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KARL WIRTH,<br><br>    Plaintiff,<br><br>v.<br><br>SALESFORCE, INC.,<br><br>    Defendant. | Civil Action No. 1-23-cv-11718-BEM |

**JOINT STATUS REPORT**

Pursuant to the Court's May 14, 2025 Order, the parties submit the following status report:

The parties are in agreement that they anticipate the use of expert witnesses and the filing of dispositive motions. They further agree that they are not requesting referral to the Courts' mediation program at this time.

As the parties have not been able to reach agreement concerning the balance of this status report, they present their respective positions as follows:

 **A. Plaintiff**

The parties have served and responded to document requests and interrogatories. At present, neither party has completed its document production, but both anticipate doing so within the coming week.

Although several depositions have been noticed, none have been completed and the parties are actively working through scheduling issues. Defendant intends to seek a protective order prohibiting Plaintiff from deposing two of its employees.

Plaintiff requests a 90-day extension of the fact discovery deadline, as well as a corresponding extension of all other case deadlines. Given the current status of discovery, as well as Defendant's planned motion for a protective order, additional time is needed to complete discovery in a fair and efficient manner. While Defendant apparently contends that all of the delays to date have been the fault of Plaintiff's counsel, that is simply not true. Plaintiff served his document requests on January 10, 2025, along with a notice of deposition for one of the key witnesses in this matter. Defendant did not produce a single document until earlier today and, despite repeated requests and promises that dates would be forthcoming, has not provided any available dates on which the first noticed deposition can take place. Further, Defendant just advised Plaintiff that it is seeking a protective order to prevent the deposition of two other key witnesses— ***one of whom was identified by Defendant in its Initial Disclosures as a likely witness***.

**B. Salesforce**

1. On July 28, 2023, Plaintiff Karl Wirth ("Mr. Wirth" or "Plaintiff") filed this action (Dkt. 1).

2. On October 16, 2023, Defendant Salesforce, Inc. ("Salesforce") moved to dismiss the Complaint with prejudice (Dkt. 12-15).

3. On November 6, 2025, Mr. Wirth filed the First Amended Complaint, instead of opposing the motion to dismiss (Dkt. 17).

4. On December 5, 2023, Salesforce moved to dismiss the First Amended Complaint with prejudice, which Mr. Wirth opposed (Dkt. 20-30).

5. On July 15, 2024, oral arguments were held on Salesforce's Motion to Dismiss the First Amended Complaint (Dkt. 35).

6. On September 13, 2024, the Court denied Salesforce's Motion to Dismiss the First Amended Complaint (Dkt. 36).

7. On September 27, 2024, Salesforce filed its Answer and Affirmative Defenses (Dkt. 37).

8. On October 10, 2024, the parties submitted a Joint [Proposed] Scheduling Order (Dkt. 40).

9. On October 17, 2024, the Court held a Scheduling Conference. At the Scheduling Conference, the Court set a trial date for June 26, 2026, and instructed the parties to submit a revised scheduling order consistent with the Court's guidance at the scheduling conference, which guidance included that summary judgment must be fully briefed one year before the trial (Dkt. 41).

10. On October 23, 2024, the parties submitted a Revised Joint [Proposed] Scheduling Order (Dkt. 42).

11. On October 25, 2024, the Court adopted the Revised Joint Scheduling Order (Dkt. 43) and set the following pertinent deadlines and events:

   a. May 30, 2025: All discovery, other than expert discovery, must be completed.

   b. June 20, 2025: Both parties must designate their experts and disclose the information contemplated by Fed. R. Civ. P. 26(a)(2).

   c. July 25, 2025: Expert depositions, if any, must be completed.

   d. August 15, 2025: Dispositive motions must be filed.

   e. September 5, 2025: Oppositions must be filed.

   f. September 19, 2025: Replies must be filed.

   g. May 20, 2025 (11:30 am): Status Conference.

   h. June 8, 2026 (9:00 am): Jury Trial set (expected to be two weeks).

## II. Discovery

12. On January 10, 2025:

    a. Mr. Wirth served his First Set of Interrogatories and First Requests for Production of Documents on Salesforce.

    b. Mr. Wirth sent a notice of deposition for Salesforce employee Murali Krishnaprasad. The notice scheduled the deposition for February 5, 2025, but the parties agreed to revisit the deposition date. Salesforce is confused by Plaintiff's claim that repeated requests to take this deposition have been made.

13. On January 21, 2025, Salesforce sent a [Proposed] Protective Order to Mr. Wirth.

14. On February 10, 2025, Salesforce responded to Mr. Wirth's written discovery requests.

15. On February 25, 2025, Salesforce served its First Set of Interrogatories and First Requests for Production of Documents on Mr. Wirth.

16. On April 15, 2025, Mr. Wirth provided written responses to Salesforce's First Requests for Production of Documents and his edits to the [Proposed] Protective Order.

17. On April 23, 2025, Salesforce provided some additional edits to the [Proposed] Protective Order.

18. On April 28, 2025, Mr. Wirth approved the [Proposed] Protective Order for filing with Salesforce's final edits.

19. On April 29, 2025, Mr. Wirth provided his interrogatory responses to Salesforce.

20. On May 1, 2025:

    a. Salesforce served its First Set of Requests for Admission, noticed Mr. Wirth's deposition, and provided Mr. Wirth with the two subpoenas Salesforce planned to serve on his former employer, Treasure Data, and his current employer and company Mr. Wirth co-founded, Stravu.

    b. Salesforce filed the [Proposed] Protective Order (Dkt. 45). The Court entered the order (Dkt. 46).

21. On May 2, 2025, Salesforce served subpoenas on Treasure Data and Stravu. The subpoenas set a May 20, 2025 document production deadline for both third-parties and noticed Treasure Data's deposition for May 29, 2025, and Stravu's deposition for May 30, 2025.

4

22. On May 8, 2025:

   a. Mr. Wirth sent deposition notices for former Salesforce employee Lidiane Jones (Mr. Wirth's former manager) and former Salesforce employee Syam Nair, scheduling their depositions for May 21 and May 23, respectively.

   b. Mr. Wirth noticed current Salesforce executives Stephen Fisher's and Parker Harris's (co-founder of Salesforce) depositions for May 19 and May 20, respectively.

23. Salesforce reached to Mr. Wirth on May 8 and 12, 2025, to address what Salesforce perceived to be incomplete and evasive responses to some of its interrogatories, including sending a detailed email of the issues and specific additional information to Mr. Wirth.

24. On May 14, 2025, the parties engaged in a meet and confer and Mr. Wirth agreed to supplement some of his interrogatory responses by May 19, 2025 at 4:00 pm.

25. On the May 14, 2025, meet and confer, the parties also discussed the deposition notices. Specifically:

   a. Salesforce asked to reschedule Mr. Wirth's deposition notice to May 29 or 30, depending on Mr. Wirth's schedule and so long as Mr. Wirth produces his supplemental interrogatory responses and documents by the promised dates.

   b. Salesforce explained that Ms. Jones was unavailable until at least June 2, 2025, but Salesforce would agree to extend fact discovery beyond the May 30, 2025 deadline for the purpose of allowing Mr. Wirth to take Ms. Jones' deposition. Salesforce also noted that Ms. Jones is a former employee and should have been subpoenaed.

   c. Salesforce agreed to extend fact discovery beyond the May 30, 2025 deadline for the purpose of allowing Mr. Wirth to take Mr. Krishnaprasad's deposition.

   d. Salesforce explained that Mr. Nair is a former employee and it had not been in touch with him. Therefore, Salesforce would send Mr. Wirth the contact information it had so Mr. Wirth could serve a subpoena. Salesforce sent that information after the call.

   e. Salesforce stated that it did not believe Mr. Wirth had grounds to depose Mr. Fisher or Mr. Harris under the Apex doctrine. Therefore, it would move for a protective order should Mr. Wirth not withdraw those notices. The parties could not resolve this dispute during the meet and confer and Salesforce will move for a protective order regarding Mr. Fisher's and Mr. Harris' depositions.

    f. The parties discussed extending fact discovery for purposes of allowing Mr. Wirth to depose Mr. Fisher and/or Mr. Harris should the Court deny the motion(s) for protective order. Salesforce explained that it would consider this and get back to Plaintiff.

26. On the May 14, 2025 meet and confer:

    a. The parties also discussed the fact discovery deadline more broadly. The parties disagree about whether an extension is necessary, which is addressed in Section V below.

    b. Mr. Wirth represented to Salesforce that he will make his production early in the week of May 19-23, 2025.

    c. Salesforce served the majority of its document production on May 16, 2025. Salesforce expects to complete the remainder of its production, which consists of a limited number of documents with redactions, by May 23, 2025.  Salesforce will produce its privilege log along with those documents.

27. The parties anticipate the use of expert witnesses.

### III.   Case Schedule

28. The parties have different positions regarding potential changes to the case schedule.

29. As set forth above, under the current schedule set by Judge Kelley on October 25, 2024 (Dkt. 43), fact discovery closes on May 30, 2025, expert discovery closes on July 25, 2025, and dispositive motions must be filed by August 15, 2025.

30. Salesforce does not agree to a wholesale extension of the fact discovery deadline as Mr. Wirth requests and it is absurd for Mr. Wirth to suggest that Salesforce bears any fault for the significant delays in this case given Mr. Wirth's conduct and the significant efforts Salesforce has made and the time and expense Salesforce has incurred because of Mr. Wirth's conduct.

31. Salesforce will agree to extend the fact discovery deadline to allow Mr. Wirth to depose:

    a. Ms. Jones when she is available after on or around June 2, 2025;

    b. Mr. Krishnaprasad by June 30, 2025;

    c. Mr. Fisher if the Court denies Salesforce's forthcoming Motino for Protective Order (which it should not); and

      d. Mr. Harris if the Court denies Salesforce's forthcoming Motion for Protective Order (which it should not).

32. In addition, Salesforce asks the Court to extend **Salesforce's** discovery deadline from **May 30, 2025 to July 25, 2025** so it can depose Mr. Wirth after May 30, 2025, seek additional discovery, if necessary, from the indivuals and entities Mr. Wirth agreed to identify in his supplemental interrogatory responses (which are due by 4:00 pm on Monday, May 19), and obtain other discovery to which it is entitled after it reviews Mr. Wirth's supplemental interrogatory responses, responses to Salesforce's requests for admission, and document production. With this limited extension, Salesforce hopes it will be able to file any dispositive motions and complete expert discovery by the established deadlines. However, Salesforce reserves the right to seek additional extensions because of the situation Mr. Wirth has put the parties in through his failure to prosecute his case for months and failure to comply with the rules governing discovery.

33. Salesforce has good cause to request this extension under Fed. R. Civ. P. 16(b)(4) because it has worked diligently since January 2025 to advance this case and keep it on schedule and because Mr. Wirth's significant delay in responding to Salesforce's interrogatories, Mr. Wirth's evasive and incomplete interrogatory responses (provided only a few weeks before the close of fact discovery), and Mr. Wirth's delay in responding to Salesforce's many requests to finalize the [Proposed] Protective Order, which prevented either party from producing its documents until now, have prejudiced Salesforce's ability to defend against Mr. Wirth's claims. *See O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) (noting that there must be good cause to modify a scheduling order under Rule 16(b) and emphasizing the "diligence of the party seeking amendment").

34. Mr. Wirth, however, does not have good cause to extend the fact discovery deadline at all, let alone by 90 days.

35. As shown by the above timeline (*see* Section II):

    a. Salesforce has consistently satisfied its obligations under the rules, complied with its deadlines, tried to move this case along in accordance with the Court's schedule, and discussed rescheduling Mr. Krishnaprasad's deposition with Mr. Wirth in February.

    b. Mr. Wirth, however, (1) provided his written responses to Salesforce's First Request for Production of Documents nearly 20 days late, (2) provided his interrogatory responses (which were incomplete and evasive) over 30 days late, and (3) did not get back to Salesforce about the [Proposed] Protective Order until nearly three months after Salesforce first circulated it, which prevented documents from being produced.

36. In addition, what the timeline does not show are the many unreturned voicemails and emails from Salesforce's counsel to Mr. Wirth's regarding (1) finalizing and filing the [Proposed] Protective Order, which Salesforce made clear was required for it to produce any documents, (2) Mr. Wirth's failure to respond to Salesforce's document requests and interrogatories, and (3) Mr. Wirth's failure to provide a written settlement offer until April 15, 2025, despite his obligation to provide such an offer by October 3, 2024 under Local Rule 16,1(c) and Salesforce's multiple inquiries about this obligation.

37. Salesforce is happy to produce the emails between its counsel and Mr. Wirth's counsel give the Court further context and support for the below, but, in short:

    a. Mr. Wirth's responses to written discovery were due on March 27, 2025.

    b. That deadline came and went without any response or acknowledgement from Mr. Wirth's counsel.

    c. Salesforce's counsel followed up with Mr. Wirth's counsel multiple times via email and phone, including on March 31, 2025 and April 8, 2025.

    d. Finally, on Tuesday, April 8, 2025, Mr. Wirth's counsel responded that he was "tied up with a monster arbitration the last couple of weeks" and would "get everything [he] owe[d] [Salesforce] by Monday."

    e. Despite this promise, nothing was provided on April 14, 2025.

    f. Instead, on April 15, 2025, at 10:32 PM, Mr. Wirth's counsel sent Mr. Wirth's written Responses and Objections to Salesforce's RFPs and said that he would send the interrogatory responses "tomorrow" (April 16, 2025).

    g. However, Mr. Wirth's counsel did not provide the responses on April 16, 2025.

    h. Salesforce's counsel followed up multiple times. *Id.*

    i. On April 24, 2025, Mr. Wirth's counsel promised to send the interrogatory responses "today."

    j. Unsurprisingly, he did not send the interrogatory responses on April 24, 2025.

    k. On April 28, 2025, Salesforce's counsel called Mr. Wirth's counsel to have a meet and confer about the interrogatory responses. Mr. Wirth's counsel did not pick up, so Salesforce's counsel left a voicemail. Mr. Wirth's counsel called back at 4:30 PM that day and said he would serve the responses that "afternoon."

    l. Like before, Mr. Wirth's counsel did not keep his promise.

    m. On April 29, 2025, Salesforce's counsel called Mr. Wirth's counsel again to have a meet and confer. Salesforce's counsel left a voicemail and sent a detailed follow-up email. Mr. Wirth's counsel did not respond to the voicemail or email. However, later that day, Mr. Wirth's counsel produced the interrogatory responses.

    n. As set forth above, on May 9 and May 12, Salesforce's counsel contacted Mr. Wirth's counsel about some of the interrogatory responses. The parties had a meet and confer about the responses on May 14, after Mr. Wirth's counsel finally responded to Salesforce's counsel's outreach soon after receiving the Court's notice regarding the May 20 scheduling conference.

38. Not only did Salesforce spend a significant amount of time and incur a significant amount of legal fees to chase Mr. Wirth for months about the [Proposed] Protective Order, his rule-required settlement offer, and the discovery to which it was entitled, but it proceeding with its document collection and review despite not knowing whether Mr. Wirth would agree to the confidentiality obligations set forth in the [Proposed] Protective Order so it would be ready to produce its documents soon after the order entered.

39. Mr. Wirth's suggestion that Salesforce bears any fault in this matter is unsupported by the facts and entirely baseless.

9

40. Because of Mr. Wirth's conduct in this case, he has not met and cannot meet Fed. R. Civ. P. 16(b)(4)'s standard for modifying the schedule. Under this rule, "[a] schedule may be modified only for good cause and with the judge's consent. FRCP 16(b)(4). Here, the circumstances do not justify extending Mr. Wirth's discovery deadline by 90 days for the following reasons:

First, the extension is only necessary because of Mr. Wirth's delays, which were allegedly caused by his attorney's other case demands. It is well-established that an attorney's other matters do not meet the good cause standard for granting a deadline extension. *See Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 7-8 (1st Cir. 2023) (finding that counsel's "'number of [urgent legal] matters which accumulated' during the period" did not justify failing to meet court-appointed deadlines). Indeed, "[t]his explanation is old hat" and "is emblematic of an excuse [Courts] have rejected time and again." *Id.*

Second, Mr. Wirth never even asked Salesforce or the Court to move the RFP or Interrogatories deadlines and, instead, just ignored his obligations under the rules and Salesforce's many emails and calls, leaving Salesforce required to pursue him for any information about the status of his outstanding obligations. Mr. Wirth's complete disregard for the Court's scheduling order and his failure to request a filing extension is one factor supporting a refusal to move Court-ordered deadlines. *See id.* at 7.

Third, Mr. Wirth agreed to the fact discovery deadline when the parties submitted the joint scheduling order and it is not a deadline that was imposed on Mr. Wirth by Salesforce or the Court. *See id.* (declining to extend plaintiffs' deadline where plaintiff requested the deadline at issue and explaining that "when a litigant…proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline" (internal quotations omitted)). As the First Circuit advised, "Court-imposed deadlines ought to be taken seriously, and litigants flout them at their

own risk." *Id.* Indeed, not only does Mr. Wirth's conduct prejudice Salesforce, but it also prejudices the "the court itself, which has a strong institutional interest in ensuring the litigants honor court orders so that it may efficiently administer its docket." *Id.* at 9.

For these reasons, except as agreed by Salesforce above, Mr. Wirth should be held to the fact discovery deadline to which he agreed and Salesforce's fact discovery deadline should be extended to June 30, 2025.

| | |
|---|---|
| Dated: May 16, 2025 | Dated: May 16, 2025 |
| **HARTLEY MICHON ROBB HANNON LLP** | **K&L GATES LLP** |
| */s/ Patrick J. Hannon* | */s/ Kathleen D. Parker* |
| Patrick J. Hannon (BBO# 664958) | Kathleen D. Parker (BBO# 681635) |
| Hartley Michon Robb Hannon LLP | K&L GATES LLP |
| 101 Federal Street, Suite 1810 | One Congress Street, Suite 2900 |
| Boston, MA 02110 | Boston, MA 02114 |
| Telephone: (617) 723-8000 | Tel.: (617) 261-3100 |
| Facsimile: (617) 447-2800 | Fax: (617) 261-3175 |
| phannon@hmrhlaw.com | kathleen.parker@klgates.com |
| *Attorneys for Plaintiff Karl Wirth* | *Attorney for Defendant Salesforce, Inc.* |