**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| **KARL WIRTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **23-11718-BEM** |
| | ) | |
| **SALESFORCE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MURPHY, J.**

After his termination from Defendant Salesforce, Inc., Plaintiff Karl Wirth brought suit alleging one count of retaliation in violation of the whistleblower protection provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A. Before the Court is Salesforce's motion for summary judgment. For the reasons set forth below, the motion will be granted.

## I.    Background

### A.    Factual Background

Salesforce is a software company that provides business applications for organizations. Dkt. 112 (Plaintiff's Response to Defendant's Statement of Material Facts or "RSMF") ¶ 1.[1] Wirth, a co-founder of Evergage, Inc., was hired as an executive at Salesforce when Salesforce acquired Evergage in 2020. *Id.* ¶¶ 2–4. As part of the acquisition, Salesforce acquired Evergage's

---

[1] Unless otherwise noted, citation to the RSMF, Dkt. 112, refers to the facts as admitted or substantially agreed upon by the parties.

customer data platform ("CDP"), which unifies customer data from multiple sources "so that data can be . . . used to complete many functions." *Id.* ¶¶ 4–6.

Wirth was hired in 2020 as Vice President, Product Management, *id.* ¶ 4, and promoted to Senior Vice President Product Management in February 2022, *id.* ¶ 11, which coincided with a Salesforce reorganization, *id.* ¶¶ 12–13. One of Wirth's tasks was to "lead[] the unification of [Evergage's product, renamed Interaction Studio ("IS")] and Salesforce's CDP." *Id.* ¶ 14; *see also id.* ¶ 9. This unification project involved "integrating additional real time capabilities into the CDP." Dkt. 101 ¶ 35.[2] The parties dispute the real-time capabilities of Evergage's CDP and the core functions a product must perform in "real time" to itself be considered "real time." *See* RSMF ¶¶ 26–27; *see also id.* ¶¶ 28–30, 32–33 (disputing the industry definition of "real time").

Salesforce planned to announce the CDP/IS unification at Salesforce's annual Dreamforce ("DF") conference on September 20–22, 2022. *Id.* ¶ 38[3]; *see also* Dkt. 112-52 at 2 (message from Salesforce executive describing the unification as "one of the single biggest things we will announce at DF"). Dreamforce "is often used to announce new products and offerings" and "is regularly attended by tens of thousands of industry professionals and financial analysts and receives extensive press coverage." Dkt. 124 ¶ 29.[4] The parties dispute the extent to which

---

[2] Wirth contends that the goal was better characterized as making the CDP real time. *See id.* ¶ 35 ("The first sentence is disputed in part to the extent of its characterization 'integrating additional real-time capabilities into the CDP'; the initiative was to make the CDP real-time, which was a phrase used synonymously at Salesforce with IS/CDP unification."); *see also id.* ¶ 14 ("The final sentence is disputed in part to the extent it (i) fails to note that this 'unification' project was synonymously referred to as making the CDP real time.").

[3] Wirth's response to this paragraph of Salesforce's statement of material facts appears to miscount the sentences therein and does not admit or dispute the truth of this fact. Wirth states only that he disputes Salesforce's contention "that the real time CDP (also referred to as IS/CPD unification) was only 'a small part of Salesforce's new data platform project,'" and states that "[t]he real time CDP was the central component that was supposed to give Genie [the name for the unified product] its 'magic.'" *Id.* ¶ 38.

[4] Unless otherwise noted, citation to Dkt. 124 refers to the facts as admitted or substantially agreed upon by the parties.

Salesforce's Dreamforce slide presentation "show[s] that Salesforce planned to clearly convey what elements of its products had real time processing capabilities, which did not, and which might in the future," and dispute the extent to which Wirth worked on the slides.  RSMF ¶¶ 40–41.

In the months leading up to Dreamforce, Wirth expressed concerns about the timeline for achieving real-time CDP.  On March 7, 2022, Wirth's former manager communicated to other Salesforce executives in a series of messages over slack: "[Wirth] told [marketing] that we won[']t be ready to announce real time CDP at DF"; "[I] gave him grief"; "he said CDP/IS working groups aren't making enough progress, there are still major decisions that need to be made; and the data spaces slip for CDP is a huge issue"; "says they are fine on the IS side"; "but CDP is slowing things down"; "[t]old him he needs to escalate if we have blockers"; "not to go to [marketing] and say we shouldn't announce"; "ridiculous."  Dkt. 101-32 at 3.  On April 5, 2022, Wirth sent a message on slack to Salesforce executives, stating, "[t][he problem is that we need CDP senior leadership to participate and I have not been able to get CDP senior leadership to take seriously the fact that we are now 9 months from supposing to ship a joint solution with massive questions unresolved."  Dkt. 112-49 at 3.  On September 7, 2022, approximately two weeks before Dreamforce, Wirth sent a message via slack to a Salesforce colleague in marketing stating, "[t]he company is launching Real-Time CDP in a big way at Dreamforce.  The CDP is not currently real-time and won't be for 9 months or so when the IS Pipeline is merged in."  Dkt. 101-58 at 3.  "Wirth testified at his deposition that he thought Salesforce 'announcing as generally available a real-time CDP . . . at Dreamforce . . . would be defrauding the shareholder because . . . it would be material, like it's a real big deal to have a real-time CDP, and . . . I thought that [shareholders] would make – I would have made trading decisions based off of that."  RSMF ¶ 19 (quoting Dkt. 101-10 at 191:25–192:15).

Wirth was terminated on September 9, 2022.[5]  *Id.* ¶ 17.  Wirth reported Salesforce's conduct to the Securities and Exchange Committee ("SEC") in the months after Dreamforce.  *Id.* ¶ 43.

### B.    Procedural Background

Wirth filed a complaint against Salesforce on July 28, 2023.  Dkt. 1.  Salesforce moved to dismiss the complaint on October 16, 2023.  Dkt. 12.  Wirth subsequently filed an amended complaint on November 6, 2023, Dkt. 17, which Salesforce again moved to dismiss, Dkt. 20.  Another session of this Court denied the first motion to dismiss as moot, Dkt. 32, and denied the second motion to dismiss on the merits, Dkt. 36.  Salesforce filed an answer on September 27, 2024.  Dkt. 37.

On January 14, 2026, Salesforce moved for summary judgment, Dkt. 99, and submitted a statement of material facts, Dkt. 101.  Wirth opposed the motion for summary judgment, Dkt. 111, and filed a statement of additional material facts, Dkt. 110, and a response to Salesforce's statement of material facts, Dkt. 112.  Wirth then moved to strike certain summary judgment evidence as inadmissible.  Dkt. 119.  Salesforce, for its part, moved to strike portions of Wirth's statement of additional material facts and response to Salesforce's statement of material facts.  Dkt. 125.  The Court held a hearing on March 2, 2026, and took the motions under advisement.

### II.    Standard of Review

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[5] Because the Court grants summary judgment without needing to address whether Wirth's purported protected activity was a reason for the unfavorable employment action, the Court omits facts related to Wirth's employment performance and evaluations.

*Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position."  *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of its claim or defense is at least trialworthy."  *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis omitted).  "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'"  *Satanic Temple, Inc. v. City of Boston*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III.    <u>Discussion</u>

The Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, "protects 'whistleblower' employees of publicly-traded companies by prohibiting employers from retaliating against employees because they provided information about specified potentially unlawful conduct."  *Day v. Staples, Inc.*, 555 F.3d 42, 52 (1st Cir. 2009).  "[T]he whistleblower bears the burden to prove that his protected activity 'was a contributing factor in the unfavorable personnel action alleged in the complaint.'"  *Murray v. UBS Sec., LLC*, 601 U.S. 23, 27 (2024) (quoting 49 U.S.C.

5

§ 42121(b)(2)(B)(i)).[6]  Specifically, to make a prima facie showing of whistleblower retaliation under SOX:

> [T]he employee's complaint must allege the existence of facts and evidence showing that: "(i) the employee engaged in a protected activity or conduct; (ii) the [employer] knew or suspected, actually or constructively, that the employee engaged in the protected activity; (iii) the employee suffered an unfavorable personnel action; and (iv) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action."

*Day*, 555 F.3d at 53 (second alteration in original) (quoting 29 C.F.R. § 1980.104(b)(1)).  "If the whistleblower makes that showing, the burden shifts to the employer to show 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of' the protected activity."  *Murray*, 601 U.S. at 27–28 (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)).

### A.    Prima Facie Retaliation

#### 1.    Protected Activity

"To satisfy the 'protected activity' requirement, an employee must show that he had both a subjective belief and an objectively reasonable belief that the conduct that he reported constituted a violation of one of the provisions listed in Section 1514A(a)(1)."  *Baker v. Smith & Wesson, Inc.*, 40 F.4th 43, 48 (1st Cir. 2022).  Salesforce argues that Wirth failed to establish that he engaged in protected activity because evidence suggests Wirth did not actually believe Salesforce was going to commit fraud, and because Wirth's purported belief was objectively unreasonable.  Dkt. 100 at 9–18.

---

[6] SOX provides that such actions "shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code."  18 U.S.C. § 1514A(b)(2)(C).

a.    **Subjective Belief**

As to Wirth's subjective belief, Wirth provided sworn testimony that he "believed that it would be unlawful to falsely claim this achievement at Dreamforce, if it had not actually been achieved, and that making such a claim would likely violate numerous provisions of federal law relating to fraud against shareholders, as well as rules and regulations of the SEC." Dkt. 124 ¶ 32 (first citing Dkt. 101-10 at 169:10–170:13, 190:22–192:15 (Wirth's deposition testimony); then citing Dkt. 101-19 at 4–5 (Wirth's response to Salesforce's first set of interrogatories)). This is further bolstered by, in addition to other reports to Salesforce executives, Wirth's telling the marketing team in September 2022 that "[t]he company is launching Real-Time CDP in a big way at Dreamforce. The CDP is not currently real-time and won't be for 9 months or so." Dkt. 101-58 at 3.

In its motion for summary judgment, Salesforce points to several other pieces of evidence that Salesforce argues "repudiate [Wirth's] claim that he believed Salesforce would commit shareholder fraud and violate SEC rules if it referred to its CDP as 'real time.'" Dkt. 100 at 9. However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" on summary judgment. *Anderson*, 477 U.S. at 255; *cf. Aubin v. Fudala*, 782 F.2d 280, 284 (1st Cir. 1993) (Breyer, J.) ("Credibility is a matter for the jury.").

As an illustrative example, another court in the First Circuit considered subjective belief in the context of an employee who sought protection under the Maine Whistleblower Protection Act after complaining about a COVID-19 masking policy, and provided the following analysis:

7

The Defendant . . . argues that [Plaintiff] did not complain about the policy because he thought it was unsafe or illegal, but because he felt it was unfair that he had to wear a mask . . . . The Defendant focuses on the portion of Plaintiff's deposition testimony where he explained that he did not like wearing a mask and probably would not have worn one had it not been required. . . . [B]ut considered in context, and with all reasonable inferences in his favor, [Plaintiff's] statements are subject to a different interpretation than the one offered by the Defendant. . . . [C]onvenience store clerks were on the frontlines of a frightening battlefield. Seen from that perspective, [Plaintiff] was understandably frustrated that his employer required him to serve customers even if they refused to wear a mask. [Plaintiff] also testified that he complained about the masking policy because he thought it violated the Executive Order and put him and his coworkers at risk of contracting the virus. *On this record, a reasonable juror could conclude that, in context, the Plaintiff's comment that he probably would not have worn a mask was an expression of his frustration . . . and did not undercut his testimony that reflects he was concerned about his and his coworker's safety. The question of why [Plaintiff] complained is best suited for resolution by a jury.*

*Stowe v. Cumberland Farms*, Inc., 2023 WL 6130177, at *6 (D. Me. Sept. 19, 2023) (emphasis added) (citations omitted).[7]  Here, the extent to which Salesforce's evidence undercuts Wirth's showing as to his subjective belief is best left to the jury.[8]  At this stage, "a triable issue of fact

---

[7] Though this case implicated the Maine Whistleblower Protection Act, rather than SOX, the Maine law similarly requires that "that the employee engaged in a protected activity." *Stowe*, 2023 WL 6130177, at *5 (quoting *Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 32, *as corrected* (Mar. 8, 2016)).  Protected conduct likewise requires reporting "what the employee has reasonable cause to believe is a violation of a law or rule," *Taghavidinani v. Riverview Psych. Ctr.*, 2018 WL 1156287, at *4 (D. Me. Mar. 5, 2018) (quoting 26 M.R.S.A § 833(1)(A)), and "'[r]easonable cause' exists when the employee has both 'a subjective and objectively reasonable belief that a dangerous condition or practice exists,'" *Stowe*, 2023 WL 6130177, at *5 (quoting *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 11).

[8] In *Beacom v. Oracle America, Inc.*, the court found Beacom failed to demonstrate a subjective belief that the general manager's sales targets violated a law, regulation, or rule covered by SOX, notwithstanding his later claims during the litigation "that he believed that the inflated sales targets would ultimately be communicated to investors and that such communication would be illegal." 2015 WL 2339558, at *4–5 (D. Minn. Mar. 11, 2025), *aff'd*, 825 F.3d 376 (8th Cir. 2016). In *Beacom*, however, the facts were different in degree from those in the instant case. "At best, Beacom told [the general manager] that Beacom could see 'no path' to reach the $25 million target that [the general manager] set for the third quarter, and he told [the human resources director] that [the general manager's] sales quotas were setting the wrong expectation for senior management." *Id.* at *5. The court concluded that "[a]lthough an employee need not specify in a [SOX]–protected communication that he suspects securities fraud . . . , he must do more than Beacom did here" and highlighted that Beacom had failed to "submit some evidence that, at the time of the complaints, he held this belief." *Id.* Wirth, by contrast, repeatedly raised concerns about the Dreamforce announcement both to his superiors and to the marketing team. Further, announcing product capabilities at Dreamforce has a less tenuous connection to shareholder fraud than Beacom's purported belief that "the inflated sales targets would ultimately be communicated to investors." 2015 WL 2339558, at *5. Therefore, notwithstanding Defendant's arguments, Dkt. 100 at 9, *Beacom* does not persuade this Court that Wirth's showing was insufficient as to his subjective belief.

exists which precludes the entry of summary judgment." *Ginorio v. Contreras*, 409 F. Supp. 2d 101, 109 (D.P.R. 2006), *aff'd sub nom.*, *Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31 (1st Cir. 2007).

### b.    Objective Belief

Wirth must also demonstrate that he "had an objectively reasonable belief that the conduct constituted securities fraud or shareholder fraud." *Day*, 555 F.3d at 54.  Salesforce argues that Wirth's belief was objectively unreasonable because (1) it was based on an overly rigid definition of "real time"; (2) "someone with [Wirth's] knowledge, training and experience would have known that Salesforce was planning to explain what 'real time' and other features were not yet available" and provide appropriate context and disclaimers; and (3) Wirth's belief was "untethered from the elements of shareholder fraud or SEC rules." Dkt. 100 at 13–18.

The first two arguments, however, clearly present questions of fact for the jury.  Indeed, Salesforce's very argument—"[i]n and before 2022, there was not, as Wirth claims, a 'general accepted understanding in the industry' that 'real time' always meant all necessary functions were completed in milliseconds," *id.* at 14—coupled with the record compiled by the parties, makes evident that the definition of "real time" is a dispute of material fact at the very core of this case.

So, too, for Salesforce's second argument.  Determining relevant industry standards and what someone in a party's position should have known both present factual questions.  *See, e.g.*, *In re Lantus Direct Purchaser Antitrust Litig.*, 2026 WL 942147, at *8 (D. Mass. Feb. 11, 2026) ("While . . . [o]bjective reasonableness is ultimately a question of law to be decided by a court, . . . juries have an important role in adjudicating subsidiary factual disputes, such as industry custom and historical fact."), *report and recommendation adopted*, 2026 WL 939793 (D. Mass. Mar. 24, 2026); *HC&D, LLC v. Cashman Equip. Corp.*, 2026 WL 242152, at *4 (D. Mass. Jan. 29, 2026) ("[T]he technical knowledge that [Defendant] should have had, and whether it would have known

from that experience that the gauging report was inaccurate are all questions of fact properly resolved at trial."); *Davalos v. Baywaych Inc.*, 752 F. Supp. 3d 416, 421 (D. Mass. 2024) ("Generally, what the plaintiff knew or should have known is a question of fact to be resolved by a jury."), *reconsideration denied sub nom.*, *Davalos v. Baywatch, Inc.*, 2025 WL 1135570 (D. Mass. Apr. 17, 2025); *SEC v. EagleEye Asset Mgmt.*, 975 F. Supp. 2d 151, 160 (D. Mass. 2013) ("The scope of that duty, however, is a question of what a reasonable broker-dealer fiduciary in [Defendant's position] would do. . . . [I]t is up to the jury to determine whether [Defendant] breached his fiduciary duties . . . . The proper standard of care is for a jury to decide."); *Carter v. Scubapro*, 2011 WL 3107334, at *4 (D. Mass. May 25, 2011) ("Whether Plaintiff, given his level of knowledge, training and experience, 'should have' known of the danger arising from a failure to clean the internal components of the pressure gauge presents a question of fact for the jury.").

As to Salesforce's third argument—that Wirth's belief was insufficiently tethered to an enumerated law to be objectively reasonable, Dkt. 100 at 17—Salesforce demands too much. The standard courts apply when evaluating the objective belief prong is an evolving area of the law, so some brief background is instructive.

In *Sylvester v. Parexel Int'l LLC*, the Administrative Review Board ("ARB") of the Department of Labor repudiated its prior decision requiring that an employee "establish that the activity or conduct for which protection is claimed 'definitively and specifically' relates to one or more of the laws listed under § 1514A(a)(1)." 2011 WL 2165854, at *15 (ARB May 25, 2011) (en banc) (quoting *Platone v. FLYi, Inc.*, ARB No. 04-154, ALJ No. 2003-SOX-27 (Sept. 29, 2006)). Rather, "th[e] belief must be reasonable for an individual in [the employee's] circumstances having his training and experience." *Id.* at *12 (second alteration in original). The

circuit courts have largely adopted *Sylvester*'s rejection of the "definite and specific" standard, though they differ as to what exactly an employee must show.

The Second, Fourth, and Eleventh Circuits each employ some version of "a totality of the circumstances test where the petitioner does not have to identify the SOX provision at issue, but must make some showing of scienter, materiality, reliance, or loss in order to enjoy SOX protection." *Ronnie v. Off. Depot, LLC*, 81 F.4th 1345, 1351 (11th Cir. 2023) (concluding that "while the employee need not 'definitively and specifically' prove each element of fraud, he must make more than a conclusory allegation"); *see Northrop Grumman Sys. Corp. v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 927 F.3d 226, 235 n.9 (4th Cir. 2019) ("[T]he plain text of the statute compels us to conclude that the reasonableness of an employee's belief must be measured against the specific statutory provisions in § 1514A(a)(1) requiring approximation of the elements of shareholder fraud in this case."); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 n.6 (2d Cir. 2014) ("We are less certain whether the ARB was correct in concluding that a § 1514A complaint need not even approximate specific elements of the enumerated provisions allegedly violated, or that there is no requirement that the violation must be material." (internal quotation marks omitted)).

On the other hand, the Third, Sixth, Eighth, Ninth, and Tenth Circuits more fully adopted *Sylvester*'s "reasonable belief" standard. *See Wadler v. Bio-Rad Lab'ys, Inc.*, 916 F.3d 1176, 1187 (9th Cir. 2019); *Genberg v. Porter*, 882 F.3d 1249, 1256 (10th Cir. 2018); *Beacom v. Oracle Am.,*

11

*Inc.*, 825 F.3d 376, 380 (8th Cir. 2016); *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 810 (6th Cir. 2015); *Wiest v. Lynch*, 710 F.3d 121, 133 (3d Cir. 2013).[9]

"[T]he First Circuit has not . . . reconsidered whether an employee must approximate each element of fraud to establish a violation of the SOX whistleblower provision" since *Sylvester* was decided. *Wirth v. Salesforce, Inc.*, 749 F. Supp. 3d 231, 238 (D. Mass. 2024) [hereinafter *Wirth I*]. However, at the motion to dismiss stage, another session of this Court "f[ound] that the ARB's reasoning in *Sylvester* is persuasive; thus, it is entitled to *Skidmore* deference." *Id.* Accordingly, "[t]o be objectively reasonable," the belief need only "be reasonable for an individual in the employee's circumstances having his training and experience." *Id.* at 240 (quoting *Sylvester*, 2011 WL 2517148, at *12).[10]

A jury could find that a reasonable person in Wirth's position could have concluded, given the delays in achieving the "real-time" capabilities to be announced at Dreamforce, that Salesforce nevertheless planned to announce "real-time" CDP at Dreamforce, and that doing so would defraud shareholders, who would make investing decisions in response to the announcement. *See Faiola v. APCO Graphics, Inc.*, 2010 WL 11579960, at *5 (D. Mass. Jan. 12, 2010) (noting in the context of a breach contract dispute that "[t]he objective reasonableness of the employee's belief

[9] The Fifth Circuit has not definitively reconsidered the "definitive and specific" standard, but has "quoted with approval *Sylvester*'s statement that SOX's 'critical focus is on whether the employee reported conduct that he or she reasonably believes constituted a violation of federal law.'" *Wallace v. Tesoro Corp.*, 796 F.3d 468, 479 (5th Cir. 2015) (emphasis omitted) (quoting *Villanueva v. U.S. Dep't of Lab.*, 743 F.3d 103, 109 (5th Cir. 2014)).

[10] Under the law of the case doctrine, the Court will not revisit the issue of which legal standard is required, as it is a pure question of law. *See O'Rourke v. Hampshire Council of Gov'ts*, 2017 WL 1170825, at *2 (D. Mass. Mar. 29, 2017) (applying law of the case doctrine to a pure question of law decided at the motion to dismiss stage and raised again at summary judgment); *see also P.D.K. Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 7 (D.D.C. 2004) ("Even if different language is used in a summary judgment motion than in a previous motion to dismiss, if the same legal theory supports both motions, the disposition of the motion to dismiss may serve as the law of the case and on these grounds, a court may similarly dispose of a motion for summary judgment." (footnote omitted)). The parties have not presented any basis to revisit this decision. *See Conley v. United States*, 323 F.3d 7, 13 (1st Cir. 2003) ("Two of the grounds permitting a deviation from law of the case are where there has been a change in prevailing law or where there is new evidence on the question at issue." (citing *Ellis v. United States*, 313 F.3d 636, 647–48 (1st Cir.2002)).

is generally a question of fact"), *aff'd*, 629 F.3d 43 (1st Cir. 2010). As discussed above, SOX does "not require a complainant to 'prove a violation of the substantive laws,' but merely to have 'a reasonable belief of a violation of the laws.'" *Wirth I*, 749 F. Supp. 3d at 237 (quoting *Sylvester*, 2011 WL 2165854, at *18). Accordingly, summary judgment is inappropriate as to this prong, where questions of fact remain for the jury.

### 2.    Employer Knowledge

Next, Wirth must establish that "[t]he respondent knew or suspected that the employee engaged in the protected activity."[11] 29 C.F.R. § 1980.104(e)(2)(ii); *see also Wirth I*, 749 F. Supp. 3d at 236. An employee need not report to his employer exactly which statutory provision may be violated, but merely engaging in protected activity is not enough. That would render the second prong—employer knowledge—superfluous. *See Wiest*, 710 F.3d at 134 ("[W]hether an employee's communication is indeed 'protected activity' . . . is distinct from whether the employer had reason to suspect that the communication was protected.").

Here, the Court finds that Wirth did not do enough to give Salesforce reason to suspect that Wirth was engaging in protected activity. There is no question that Wirth expressed concerns about achieving real-time CDP before Dreamforce:

- Wirth's former manager stated that Wirth told the marketing team that they would not be ready to announce real-time CDP at Dreamforce, over which the former manager "gave him grief" and "[t]old [Wirth] he needs to escalate if we have blockers," "not to go to [marketing] and say we shouldn't announce." Dkt. 101-32 at 3.

- Wirth told Salesforce executives that he had "not been able to get CDP senior leadership to take seriously the fact that we are now 9 months from supposing to ship a joint solution with massive questions unresolved." Dkt. 112-49 at 3.

---

[11] "Respondent" is defined as "the person named in the complaint who is alleged to have violated the Act." 29 C.F.R. § 1908.101(k).

13

- Wirth used color-coded progress reports to indicate that the real-time CDP project was behind schedule.  Dkt. 124 ¶ 64.

- Wirth told colleagues that "we won't have any customer facing enhancements from IS unifying with CDP in 242."[12]  Dkt. 101-40 at 3; *see also* Dkt. 124 ¶ 113.

- Wirth told his supervisor that one priority was "unification of IS/CDP into D360.  That is clear.  But even this is at risk as [Wirth's former supervisor]'s decisions (while correct in my opinion) result in additional work on IS.  The timeline of 242 for this is at real risk." Dkt. 101-35.

- Wirth told a member of the marketing team, copying his supervisor and one of her deputies, shortly before Dreamforce, "[t]he company is launching Real-Time CDP in a big way at Dreamforce.  The CDP is not currently real-time and won't be for 9 months or so." Dkt. 101-58 at 3; *see also* Dkt. 124 at 119.

In addition, Wirth points to the internal Salesforce announcement in 2021 about the planned Dreamforce launch and the fact that Wirth was overseeing the efforts to make the CDP real-time and provided project status reports toward the real-time goal.  *See* Dkt. 111 at 14.  Wirth argues that, taken together, this provides the jury "ample attendant circumstances from which it could find that Salesforce actually or constructively knew or suspected that Wirth engaged in protected activity when Wirth warned that the work need to make the CDP real-time in time for Dreamforce was not being done."  *Id.*

But employees routinely raise concerns about timelines, expectations, quotas, and the like during the course of their work.  Every complaint that timing expectations may not be met is not protected whistleblower activity, and it simply cannot be enough to put employers on notice of possible whistleblowing, even including the other "attendant circumstances" that Wirth identifies. *Id.*  Though Wirth repeatedly raised concerns about the team's ability to deliver on the planned Dreamforce announcement, and Wirth himself may have reasonably believed that such an announcement could defraud shareholders (or at least provided evidence that might support a jury

---

[12] "242" refers to a release in February 2023, termed a "Spring '23" release by Salesforce.  Dkt. 124 ¶ 114.

so finding), *see supra* section III.A.1, Wirth's communications to Salesforce executives were insufficient to put Salesforce on notice of his protected activity.  Therefore, the Court grants Salesforce's motion for summary judgment.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Wirth's motion to strike certain summary judgment evidence as inadmissible and Salesforce's motion to strike portions of Wirth's statement of additional material facts and response to Salesforce's statement of material facts are both DENIED as moot.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  April 27, 2026                          Judge, United States District Court